1

2

3

4                              UNITED STATES DISTRICT COURT

5                             NORTHERN DISTRICT OF CALIFORNIA

6

7    INNOVATIVE SPORTS MANAGEMENT,          Case No.  24-cv-02678-PCP
     INC.,

8                    Plaintiff,             **ORDER GRANTING MOTION FOR**
                                            **DEFAULT JUDGMENT**
9           v.

10   LADY Z. LIZCANO, et al.,

11                   Defendants.

12

13          Plaintiff Innovative Sports Management owns the domestic commercial exhibition rights

14   to broadcast certain soccer games nationwide. Innovative sued defendants Lady Lizcano, Manuel

15   Trujilio, and MLSJ, Inc. for displaying one of these soccer matches inside their restaurant without

16   a license. Defendants have failed to respond to any of the allegations made by Innovative in this

17   case, and Innovative now moves for default judgment. For the following reasons, the Court grants

18   default judgment against defendants.

19   **I.      BACKGROUND**

20          For the purposes of default judgment, the factual allegations in a complaint are accepted as

21   true except for those related to damages. *See Fair Housing of Marin v. Combs*, 285 F.3d 899, 906

22   (9th Cir. 2002).

23          Innovative purchased exclusive commercial exhibition rights to license certain soccer

24   matches to business establishments, like bars and restaurants, across the United States. Innovative

25   owns the licensing rights to the October 12, 2023 soccer match between Colombia and Uruguay.

26   On that date, an agent of Innovative visited the Hacienda Parilla Bar in San José, California. The

27   agent observed the Hacienda Parilla Bar displaying the match on their televisions for its patrons to

28   view. The establishment was approximately two-thirds full at the time. The Hacienda Parilla Bar

United States District Court
Northern District of California

United States District Court
Northern District of California

1    neither advertised the event in advance, nor did it charge a cover fee for patrons to enter. It seems

2    that the game played in the background while patrons ate their lunches.

3          On its California liquor license, the Hacienda Parilla Bar lists defendant MLSJ, Inc. as its

4    primary owner. The license also lists defendant Lady Z. Lizcano as the President, CEO, CFO,

5    stockholder, and director of MLSJ. The license further lists defendant Manuel Andrade Trujilio as

6    the secretary, stockholder, and director of MLSJ.

7          Innovative filed this suit on May 3, 2024 seeking damages under 47 U.S.C. § 553 or

8    alternatively under 47 U.S.C. § 605 and damages for conversion under California state law.

9    Innovative attempted to serve process upon the defendants at the Hacienda Parilla Bar on three

10    separate occasions. To date, defendants have neither responded to Innovative's complaint nor

11    made any appearance in federal court in relation to this lawsuit. On August 27, 2024, the Clerk of

12    the Court entered default against MLSJ. On October 9, 2024, Innovative moved for default

13    judgment against all defendants. The Court held a hearing on the motion on November 21, 2024,

14    at which defendants did not appear.

15    **II.    LEGAL STANDARDS**

16          Federal Rule 55(b)(2) allows a party "to apply to the court for a default judgment." The

17    decision to enter a default judgment is entirely within the district court's discretion. *Aldabe v.*

18    *Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Courts consider the following factors in determining

19    whether default judgment is proper:

20          (1) the possibility of prejudice to the plaintiff, (2) the merits of
      plaintiff's substantive claim, (3) the sufficiency of the complaint, (4)
21          the sum of money at stake in the action; (5) the possibility of a dispute
      concerning material facts; (6) whether the default was due to
22          excusable neglect, and (7) the strong policy underlying the Federal
      Rules of Civil Procedure favoring decisions on the merits.
23

24    *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Where a plaintiff seeks default against a

25    non-appearing defendant, the court "should determine whether it has the power, i.e., the

26    jurisdiction, to enter the judgment in the first place." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

27    The Court must also assess of the adequacy of service of process on the non-appearing party. *See,*

28    *e.g.*, *Innovative Sports Management, Inc. v. Nunez*, No. 22-cv-07136-JSC, 2023 WL 4551069, at

1    *2 (N.D. Cal. July 13, 2023).

2    **III.    ANALYSIS**

3        **A.    Jurisdiction and Service of Process**

4        The Court has original subject matter jurisdiction over this lawsuit because Innovative's

5    claims arise under two federal statutes. 28 U.S.C. § 1331. The Court has supplemental jurisdiction

6    over Innovative's California conversion claim because that claim arises from the same facts that

7    give rise to the Court's original jurisdiction. 28 U.S.C. § 1367. The Court also has personal

8    jurisdiction over the defendants because MLSJ, Inc. owns Hacienda Parilla, the California-based

9    establishment at which the display of the match occurred. Defendants Lizcano and Trujilio in turn

10    are subject to the Court's personal jurisdiction by way of their roles as directors and board

11    members of MLSJ.

12        Federal Rule 4(e)(1) allows a plaintiff to serve process on a defendant by "following [the]

13    … law for serving a summons" of the state in which the federal court sits. California authorizes

14    substitute service when the "summons and complaint cannot with reasonable diligence be

15    personally delivered to the person to be served[.]" Cal. Code Civ. P. § 415.20. Courts in California

16    "permit service to be completed upon a good faith attempt at physical service on a … person

17    whose relationship with the person to be served makes it more likely than not that they will deliver

18    process to the named party." *Hearn v. Howard*, 177 Cal. App. 4th 1193, 1202–03 (2009) (cleaned

19    up). To satisfy substituted service, a plaintiff must also send the defendant a copy of the

20    documents via first-class mail at the same place where the defendant left the documents. Cal.

21    Code. Civ. P. § 415.20(b).

22        Innovative's process server unsuccessfully attempted to serve process on the defendants

23    personally by visiting Hacienda Parilla Bar on three separate occasions. On the first attempt, the

24    manager of the bar told the process server that defendants Lizcano and Trujilio are "very rarely

25    here." Yet the server returned four days later to attempt service and another three days after that

26    again attempt personal service. When the server was unsuccessful, he left the service documents

27    with a different manager and then mailed the documents to the restaurant.

28        Innovative's approach to serving process does not instill confidence in the Court that

United States District Court
Northern District of California

3

United States District Court
Northern District of California

1    Innovative was reasonably diligent in apprising defendants of the claims against them. The

2    process server, knowing that Lizcano and Trujilio rarely appear at the restaurant, nonetheless

3    attempted personal service at the same location on two subsequent occasions without attempting to

4    locate another address at which the individual defendants might appear more frequently, such as

5    their personal residences or other places of business. The Court is also wary of numerous filing

6    errors throughout this case. For example, on July 10, 2024, Innovative filed a proof of service for

7    defendant Trujilio which listed the person served on Mr. Trujilio's behalf as "Jessa 'doe', co-

8    resident." On September 26, 2024, Innovative filed a corrected proof of service form instead

9    listing the person served on Mr. Trujilio's behalf as "Juan Reyes, manager." Despite being filed

10   over two months apart, both forms bear the same signature date, June 24, 2024.

11         Under these circumstances, the Court is concerned that Innovative is teetering on the edge

12   of failing to provide "notice reasonably calculated … to apprise [the defendants] of the pendency

13   of the action[.]" *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

14   Nonetheless, Innovative appears to have satisfied the bare minimum requirements for service of

15   process in California. Innovative's agent attempted personal service three times before leaving the

16   papers at Hacienda Parilla Bar. *See Espindola v. Nunez*, 199 Cal. App. 3d 1389, 1392 (1988)

17   ("Ordinarily, … two or three attempts at personal service at a proper place should fully satisfy the

18   requirement of reasonable diligence and allow substituted service to be made.") (citation omitted).

19   Innovative's agent left the papers with Hacienda Parilla Bar's ostensible manager, Mr. Reyes,

20   someone likely to deliver the papers to the defendants. And Innovative mailed the documents to

21   Hacienda Parilla Bar. Having satisfied the minimum requirements for substitute service under

22   California law, service on each of the defendants here was proper. *See* Cal. Code Civ. P. §

23   415.20(b).

24         **B.    *Eitel* Factors**

25         The *Eitel* factors support entering default judgment against the defendants.

26         The first *Eitel* factor supports default judgment because without judgment, Innovative will

27   be left without a remedy. *See Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D.

28   Cal. 2002). The sixth factor, excusable neglect, also slightly supports default judgment because, as

4

United States District Court
Northern District of California

1    discussed above, Innovative has met the bare minimum for proper service in California. Had

2    Innovative been more diligent in attempting personal service on the individual defendants, it

3    would be clearer to the Court that the default was truly due to neglect on the part of the

4    defendants. But absent that clear showing, this factor weighs only slightly in Innovative's favor.

5         The fourth factor, sum of money at stake, also favors default judgment. Innovative requests

6    $4,000 in statutory damages and an additional $20,000 in "enhanced" damages under 47 U.S.C. §

7    605. Section 605 empowers courts to award up to $10,000 in statutory damages and $100,000 in

8    enhanced damages. Alternatively, Innovative seeks the same damages under 47 U.S.C. § 553,

9    which empowers courts to award up to $10,000 in statutory damages and up to an additional

10   $50,000 in enhanced damages. Finally, Innovative seeks $1,000 in damages for its California

11   conversion claim. Innovative seeks a total of $25,000 in damages. This is a substantial sum, but it

12   remains within the statutory range. The fourth factor therefore slightly default judgment. And the

13   fifth factor is neutral because it is impossible to know whether there will be a dispute concerning

14   material facts given the defendants' failure to appear in this action.

15        The seventh factor weighs against default judgment because the Federal Rules embrace a

16   "strong policy" of deciding cases on the merits. *Eitel*, 782 F.2d at 1472. Where one party fails to

17   litigate a case, it is impossible to decide a case on the merits.

18        On balance, the first, fourth, sixth, and seventh factors favor default judgment and the fifth

19   is neutral. The Court will now turn to the second and third *Eitel* factors, which consider the merits

20   of the claim and the sufficiency of the complaint.

21        Innovative's complaint alleges (1) violation of 47 U.S.C. § 605; (2) violation of 47 U.S.C.

22   § 553; and (3) conversion. A plaintiff may recover under either Section 605 or Section 553, but

23   not both. *See J & J Sports Prods., Inc. v. Ro*, No. C-09-02860-WHA, 2010 WL 668065, at *3

24   (N.D. Cal. Feb. 19, 2010). Where Section 553 prohibits unlawful interception of a cable signal,

25   Section 605 prohibits unlawful interception of a satellite broadcast. A defendant "cannot violate

26   both by a single act of interception." *J & J Sports Prods., Inc. v. Manzano*, No. c-08-01872-RMW,

27   2008 WL 4542962, at *2 (N.D. Cal. Sept. 29, 2008).

28        The Court concludes that the second and third *Eitel* factors weigh against awarding default

5

1    judgment under Section 605. The complaint's sole allegation purportedly giving rise to liability

2    under Section 605 is that the soccer match "originated via satellite uplink and was subsequently

3    retransmitted to cable systems and satellite companies via satellite signal to Plaintiff's lawful sub-

4    licensees." Innovative argues that this claim meets the threshold finding required for liability

5    under Section 605. But that is an incorrect statement of the law. To prevail under Section 605, the

6    complaint needs to allege that *the defendants* "intercepted a satellite transmission[] as opposed to a

7    cable signal[.]" *G & G Closed Circuit Events, LLC, v. Macias*, No. 20-cv-02916-BLF, 2021 WL

8    2037955, at *3 (N.D. Cal. May 21, 2021). The focus is on the defendants' manner of interception,

9    not the plaintiff's manner of transmission. The complaint states that the match was transmitted via

10   both cable and satellite, meaning that the defendants might have intercepted either a cable or

11   satellite display of the soccer match. "Indeed, the fact that violations of both 605 and 553 were

12   alleged in the Complaint indicates that Plaintiff is unable to specify the type of transmission." *See*

13   *J & J Sports Prods., Inc. v. Coria*, No. c-12-05779-JSW, 2015 WL 1089044, at *4 (N.D. Cal. Feb.

14   27, 2015) (cleaned up).

15          Innovative has failed to provide any clear evidence as to how the soccer match was

16   intercepted. In the absence of such evidence, courts consistently find that a violation of Section

17   553 is more likely than a violation of Section 605 because it is more likely that the defendant used

18   a cable box to display a program given the relative ease in hiding a cable box as compared to a

19   satellite dish. *See J & J Sports Prods., Inc. v. Guzman*, No. c-08-05469, 2009 WL 1034218, at *2

20   (N.D. Cal. Apr. 16, 2009) ("[G]iven that a cable box is more easily hidden, the court finds that

21   defendants violated section 553, but not section 605."); *Ro*, 2010 WL 668065, at *3 ("Without

22   better homework by the investigator, the Court will not rule out the presence of a cable box.").

23   Similarly, Innovative has done nothing to substantiate its claim of unlawful broadcast aside from

24   sending an investigator to Hacienda Parilla on the date of the soccer game. But that investigator

25   only attested to his presence at Hacienda Parilla Bar during the display of the match and said

26   nothing about investigating the means of transmission. *See J & J Sports Prods., Inc. v. Segura,*

27   No. c-12-01702-JSW, 2014 WL 1618577 (N.D. Cal. Apr. 21, 2014) ("[I]f plaintiff wanted to

28   prove this, they could have filed a third party subpoena or requested an order for inspection … a

United States District Court
Northern District of California

1   defendant's default does not eliminate the opportunity to take third party discovery.") (citations

2   omitted).

3         Given the lack of factual allegations supporting liability under Section 605, the Court finds

4   it inappropriate to enter default judgment under that provision. Instead, the Court concludes that

5   entering default judgment under Section 553 is more appropriate. Innovative filed an affidavit and

6   declaration of investigator Mario Galvez demonstrating that defendants displayed the match at

7   Hacienda Parilla Bar on October 12, 2023. Innovative also filed an affidavit and declaration of

8   Doug Jacobs, Innovative's President, demonstrating both Innovative's ownership of the licensing

9   rights to the match and defendants' failure to procure a commercial license. This is sufficient to

10   establish a basis for relief under Section 553.

11         Innovative has also provided a sufficient basis for its conversion claim. To prevail on a

12   conversion claim, a plaintiff must demonstrate "ownership or right to possession of property,

13   wrongful disposition of the property right[,] and damages." *G.S. Rasmussen & Assocs., Inc. v.*

14   *Kalitta Flying Serv., Inc.*, 958 F.2d 896, 906 (9th Cir. 1992). For the reasons stated above,

15   Innovative has satisfied these elements. This, however, supports a viable claim only against MLSJ.

16   "Directors or officers of a corporation do not incur personal liability for torts of the corporation

17   merely by reason of their official position, unless they participate in the wrong or authorize or

18   direct that it be done." *U.S. Liab. Ins. Co. v. Haidinger-Hayes, Inc.*, 1 Cal. 3d 586, 595

19   (1970). Crucially, the standard to establish individual liability for conversion "is higher than the

20   standard of individual liability in the copyright context where an ability to supervise is all that is

21   required." *Nunez*, 2023 WL 4551069, at *5. While the complaint alleges that both Lizcano and

22   Trujilio "specifically directed or permitted the employees of Hacienda Parrilla bar" to engage in

23   unauthorized interception, this is a conclusory statement that is unsupported by plausible facts

24   supporting an inference that Lizcano and Trujilio themselves directed the conduct.

25         For the foregoing reasons, the *Eitel* factors support entering default judgment against

26   Lizcano, Trujilio, and MLSJ on Innovative's claim under 47 U.S.C. § 553 and against MLSJ on

27   Innovative's conversion claim.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

IV.     SCOPE OF RELIEF

A.      Conversion

Innovative's factual allegations, taken as true, support its conversion claim, which in turn entitles Innovative to damages for this claim. In support of its motion, Innovative submitted an affidavit demonstrating that for a bar the size of Hacienda Parilla, the defendants would have paid $1,000 to display the soccer match. Given defendants failure to enter into such an agreement, Innovative is entitled to $1,000 in conversion damages. As previously noted, only MLSJ is liable for this amount.

B.      Damages under 47 U.S.C. § 553

The complaint's factual allegations, when taken as true, state a claim for relief under Section 553. Innovative is therefore entitled to damages. Under Section 553, a plaintiff may recover actual damages or "an award of statutory damages … in a sum of not less than $250 or more than $10,000 as the court considers just." 47 U.S.C. § 553(c)(3)(A). Where the court concludes that the "violation was committed willfully and for purposes of commercial advantage or private financial gain," the court may award enhanced damages of up to $50,000. *Id.* § 553(c)(3)(B). Although the Ninth Circuit has not set forth specific factors to determine an appropriate figure for damages, district courts consider a range of factors, including "use of cover charge, increase in food price during programming, presence of advertisement, number of patrons, number of televisions used, and impact of the offender's conduct on the claimant." *J & J Sports Prods., Inc. v. Concepcion*, No. c-10-05092 2011 WL 2220101, at *4 (N.D. Cal. June 7, 2011). Courts may also increase damages where the defendant has repeatedly violated the statute. *Coria*, 2015 WL 108944, at *4. Often, "courts award statutory damages in an amount equal to the actual loss based on the licensing fee[.]" *Nunez*, 2023 WL 4551069, at *6. What limited guidance the Ninth Circuit has offered indicates that district courts should consider the effect that a damages award might have in deterring the defendants' unlawful activities in the future. *See Kingvision Pay-Per-View Ltd. v. Lake Alice Bar*, 168 F.3d 347, 350 (9th Cir. 1999).

Innovative seeks $4,000 in statutory damages and $20,000 in enhanced damages. As to enhanced damages, Innovative fails to provide a clear reason why such an award is appropriate in

United States District Court
Northern District of California

1   this case. Innovative's argument largely rests on the notion that that $20,000 in enhanced damages

2   is within the statutory range and that such an award will deter similar behavior in the future. But as

3   discussed further below Innovative also concedes that the factors which would give rise to an

4   inference that defendants willfully violated Section 553 "for purposes of commercial advantage or

5   private financial gain" are not at issue here. *See* 47 U.S.C. § 553. As such, enhanced damages are

6   inappropriate.

7          As to statutory damages, Innovative's briefs concede that the defendants did not advertise

8   the match, charge a cover fee, or increase food prices during programs. Defendants are not repeat

9   violators. In support of its motion, Innovative provided an affidavit demonstrating that defendants

10  would have paid $1,000 to display the soccer match in a bar the size of Hacienda Parilla. But such

11  actual damages are accounted for by this Court's award of damages under Innovative's

12  conversation claim. There is otherwise no indication in the pleadings or supporting materials that

13  an award of $4,000 in statutory damages is proper. Innovative is correct that an award of damages

14  under Section 553 should deter defendants from engaging in such behavior in the future. But the

15  Court must not consider the deterrent effect of statutory damages standing alone; instead, courts

16  consider the deterrent effect of the judgment in its entirety. *See Ro*, 2010 WL 668065, at *4. In this

17  case, that includes Innovative's conversion claim and a possible future award of costs and

18  attorneys' fees. These amounts alone will total to a figure well in excess of what the defendants

19  would have paid to Innovative to sublicense the match. Considering defendants' status as first-

20  time violators and the absence of any other factors demonstrating willfulness, Innovative is

21  entitled to $250 in statutory damages under Section 553. "[T]his is a significant penalty for a first-

22  time violation that would likely promote general deterrence." *Ro*, 2010 WL 668065, at *4.

23         Accordingly, the Court awards Innovative $250 on its Section 553 claim against all

24  defendants.

25         **C.      Attorney's Fees and Costs**

26         Innovative seeks leave to file a motion in for costs and attorneys' fees. Though Section 605

27  requires courts to award costs and attorneys' fees to a prevailing plaintiff, Section 553 leaves this

28  to the court's discretion. *Concepcion*, 2011 WL 2220101, at *5 ("Under Section 605, an award is

1    mandatory, but under Section 553, it is not."). Should the Court choose to make such an award,

2    Section 553(c)(2)(C) allows for "recovery of full costs … [and] reasonable attorneys' fees."

3        Should Innovative wish to recover its fees and costs, its motion for costs and attorneys'

4    fees must be filed within 21 days of this order. Innovative's motion should both explain why the

5    Court should exercise its discretion to award costs and fees and provide a full evidentiary basis for

6    the claimed costs and fees.

7    **V.    CONCLUSION**

8        The Court rules as follows:

9        (1) Innovative's motion for default judgment is denied as to the claim under 47 U.S.C. §

10            605;

11        (2) Innovative's motion for default judgment is granted as to the claims under 47 U.S.C. §

12            553 and for conversion;

13        (3) The Court awards Plaintiff $1,250 in damages, including $1,000 in conversion

14            damages against defendant MLSJ and $250 in statutory damages against all

15            defendants; and

16        (4) Innovative shall file its motion for attorneys' fees and costs within 21 days of this

17            order.

18        **IT IS SO ORDERED.**

19    Dated: December 23, 2024

20

21    _____

22    P. Casey Pitts
      United States District Judge

23

24

25

26

27

28

United States District Court
Northern District of California